UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NOEL CALDELLIS,<br><br>                    Petitioner,<br><br>    v.<br><br>MIKE OBENLAND,<br><br>                    Respondent. | CASE NO. C17-78 RSL-BAT<br><br>**REPORT AND<br>RECOMMENDATION** |

Petitioner Noel Caldellis challenges his 2010 Snohomish County conviction of murder in the first degree under 28 U.S.C. § 2254. Dkt. 3. By counsel, he raises six grounds for relief:

1. There is a reasonable likelihood the jury understood the instructions in a manner that allowed it to convict Mr. Caldellis on less proof than was constitutionally required.

2. Mr. Caldellis was denied his right to effective assistance of trial counsel when counsel failed to ensure instructions the [sic] clearly required the jury to find the elements of the crime of murder.

3. Mr. Caldellis was denied his right to effective assistance of appellate counsel when counsel failed to assign error to the instructions.

4. Counsel was ineffective for failing to propose self-defense instructions on the murder count.

5. The prosecutor's remarks went beyond a fair response when he asked jurors to consider a "big reason" why a criminal defendant might not testify.

REPORT AND RECOMMENDATION - 1

6.      If the prosecutor's remarks constituted a fair response, then trial counsel was ineffective for inviting the response.

Dkt. 3 (Habeas Petition).

In his Answer, respondent concedes each ground for relief is properly exhausted, and that the petition is timely. Consequently, the Court need not detail the procedural history of the case. Respondent argues the Court should deny the petition, without an evidentiary hearing, and dismiss the matter because (1) the state court  reasonably determined the instructions the trial court gave were proper; (2) state law instructional errors are not a basis for federal habeas relief; (3) the Washington Supreme Court found, as a matter of state law, the instructions given in Mr. Caldellis' case did not omit an element of the offense, and counsel therefore was not constitutionally ineffective; (4) trial counsel's failure to request a self-defense instruction was a tactical decision and not an unreasonable or inconsistent application of United States Supreme Court law; and (5) the state court's determination that the prosecutor's closing argument did not infringe upon Mr. Caldellis' right to remain silent is not an unreasonable or inconsistent application of United States Supreme Court law. *See* Dkt. 10.

The Court, having reviewed the pleadings and the record, recommends Mr. Caldellis' habeas petition be **DENIED** and the action **DISMISSED with prejudice**, without an evidentiary hearing. The Court also recommends **GRANTING** issuance of a certificate of appealability on grounds for relief 1, 2, 4, 5, and 6 and **DENYING** issuance of a certificate of appealability on ground for relief 3.

## FACTS SURROUNDING THE CONVICTION

The Washington Supreme Court summarized the facts of Mr. Caldellis' case as follows:

REPORT AND RECOMMENDATION - 2

1    One fall night in September 2006, Caldellis and a group of friends were driving to
2    a house party in Seattle where they expected to watch two people fight. On their
     way to the party, the group stopped at a store to buy food and get directions. Two
     members of the group got into a heated argument. One pulled a handgun. Caldellis
3    stepped in and took the gun away.

4    Eventually, the group arrived at the party. As Caldellis and his friends approached
     the house, approximately 30 people flooded outside, yelling profanities and racial
5    slurs. A brawl immediately broke out. One witness testified that he saw someone
     run up to Caldellis as if to attack him and that Caldellis dodged and punched the
6    attacker. Caldellis then pulled out a gun and fired it twice in the air. He waved the
     gun briefly before firing at least two horizontal—and ultimately fatal—shots into a
7    group of people. One witness testified she saw "somebody fall" to the ground "in
     the driveway." 11 Verbatim Report of Proceedings (VRP) (Nov. 26, 2007) at 1605,
8    1604.

9    After shots were fired, Caldellis and others left in their cars. In the "pandemonium"
     of the fighting and gunshots, many of the partygoers rushed back into the house and
10   called the police. 8 VRP (Nov. 19, 2007) at 1118. Snohomish County police officers
     arrived at the house and found Jay Clements lying on the ground with two gunshot
11   wounds.

12   The next day, police arrested Caldellis. After being advised of his constitutional
     rights, Caldellis admitted that he had taken the gun with him to the party and
13   brandished it when the fighting began. He also told the police that he fired two shots
     into the air and then fired into a crowd of people. Caldellis recalled that he did such
14   a "stupid" thing because he was drunk. 12 VRP (Nov. 27, 2007) at 2013.

15   The State charged Caldellis with murder and assault. At trial, Caldellis argued self-
     defense as to the assault charges and that he fired the fatal shot accidentally because
16   he feared he would be attacked. Caldellis was convicted of first degree murder
     based on extreme indifference to life and two counts of second degree assault. The
17   jury found he committed these crimes while armed with a firearm.

18   *In re Caldellis*, 187 Wn.2d 127, 138-39 (2016).

19                    **STANDARD OF REVIEW AND EVIDENTIARY HEARING**

20        A federal court may grant a § 2254 habeas corpus petition with respect to any claim that

21   was adjudicated on the merits in state court only if the state court's decision was (1) contrary to,

22   or involved an unreasonable application of, clearly established federal law, as determined by the

23

REPORT AND RECOMMENDATION - 3

United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2).

A state court ruling is contrary to clearly established federal law if the state court either arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. To be an unreasonable application of Supreme Court precedent, the state court's decision must be "more than incorrect or erroneous." *Cooks v. Newland*, 395 F.3d 1077, 1080 (9th Cir. 2005). Rather, it must be objectively unreasonable. *Lockyear v. Andrade*, 538 U.S. 63, 69 (2003).

In determining whether a state court decision was based on an unreasonable determination of the facts in light of the evidence, a federal habeas court must presume that state court factual findings are correct. 28 U.S.C. § 2254(e)(1). A federal court may not overturn state court findings of fact "absent clear and convincing evidence" that they are "objectively unreasonable." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). When applying these standards, a federal habeas court reviews the "last reasoned decision by a state court." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining

whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the

record before the state court. *Cullen v. Pinholster*, 563 U.S.170, 131 S.Ct. 1388 (2011). A

hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. §

2254(d).  *Landrigan,* 550 U.S. at 474. "It follows that if the record refutes the applicant's factual

allegations or otherwise precludes habeas relief, a district court is not required to hold an

evidentiary hearing." *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011). The Court finds it unnecessary

to hold an evidentiary hearing because Mr. Caldellis' claims may be resolved on the existing

state court record.

**DISCUSSION**

**A.    Claim 1 - Jury Instructions for First Degree Murder**

Mr. Caldellis was convicted of first degree murder under the "extreme indifference"

prong. *See* RCW 9A.32.030(1)(b) ("(1) a person is guilty of murder in the first degree when . . .

(b) Under circumstances manifesting an extreme indifference to human life, he or she engages in

conduct which creates a grave risk of death to any person and thereby causes the death of a

person."). Mr. Caldellis argues the trial court's jury instructions for this offense denied him due

process because "knowledge," an essential element of the crime, was omitted from the "to

convict" instruction. Dkt. 3 at 5. He also argues that because "knowledge" was not set forth as an

element in the "to convict" instruction, its placement elsewhere in the jury instructions created an

ambiguity and reasonable likelihood that the jury convicted him without finding that he "knew

his conduct created a grave risk of death." *Id.* at 8. The record establishes the trial judge gave the

following "to convict" first degree murder instruction:

> 1.    That on or about the 3rd day of September, 2006, the
>       defendant discharged a firearm;

2.      That the conduct of the defendant created a grave risk of death to another person;

3.      That the defendant engaged in that conduct under circumstances manifesting an extreme indifference to human life;

4.      That Jay Daniel Clements died as a result of the defendant's acts;

5.      That the acts occurred in the State of Washington.

*In re Caldellis*, 187 Wn.2d at 137. The trial judge also gave a separate instruction defining element No. 3:

Conduct which creates a grave risk of death under circumstances manifesting an extreme indifference to human life means an aggravated recklessness which creates a very high risk greater than that involved in recklessness.

Dkt. 3 at 5. The trial judge further instructed the jury that "reckless" is defined as:

A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and the disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.

*Id*. at 5-6.  And finally the trial judge defined knowledge as:

A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstance or result which is described as being a crime, whether or not the person is aware of the fact, circumstance or result is a crime. If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge. Acting knowingly or with knowledge is also established if a person acts intentionally.

Dkt 11, Exhibit 12 (State submission of record).

Jury instruction issues are generally matters of state law for which federal habeas relief is unavailable. *Estelle v.McGuire*, 502 U.S. 62, 67–68 (1991). A federal court does not review jury

REPORT AND RECOMMENDATION - 6

1   instructions to determine whether they violate state law because § 2254 habeas relief "does not

2   lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Not every ambiguity,

3   inconsistency, or deficiency in a jury instruction rises to the level of a constitutional violation.

4   *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). Consequently, the question a federal court

5   determines on habeas review is whether the state jury instructions given so infected the entire

6   trial that the resulting conviction is fundamentally unfair. *Estelle*, 502 U.S. at 71–73.

7           Certainly, a jury instruction that relieves the prosecution of its burden of proving each

8   element of a charged offense violates a defendant's due process rights. *Carella v. California*, 491

9   U.S. 263, 265 (1989). But to the extent a habeas petitioner claims an instruction does not

10  accurately set forth state law, the state supreme court's decision is a binding interpretation of that

11  state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state

12  court's interpretation of state law, including one announced on direct appeal of the challenged

13  conviction, binds a federal court sitting in habeas corpus.").

14          Additionally, a federal habeas court reviews claims of instructional error under a

15  harmless error standard. *Evanchyk v. Stewar*t, 340 F.3d 933, 940–41 (9th Cir. 2003). Relief is

16  only available if the error had a "substantial and injurious effect or influence in determining the

17  jury's verdict" and resulted in "actual prejudice." *Brecht v. Abrahamso*n, 507 U.S. 619, 637,

18  (1993); *Hedgpeth v. Pulido,* 555 U.S. 57, 61–65 (2008).

19          Turning first to Mr. Caldellis' contention that "knowledge" is an essential element of the

20  first degree murder-extreme indifference, the state statute defining the crime does not include the

21  word "knowledge" or otherwise explicitly contain a *mens rea* element. *See* RCW 9A.32.030. The

22  Washington Supreme Court made this clear in reviewing Mr. Caldellis' Personal Restraint

23  Petition ("PRP"), and holding "knowledge" is not an element of the offense. Instead, the

1    Washington Supreme Court held knowledge is a *requirement*, of murder by extreme

2    indifference. *In re Caldellis*, 187 Wash.2d 127 (2016).

3           The Washington Supreme Court observed the jury in Mr. Caldellis' case was instructed

4    based on the then-current Washington Pattern Jury Instructions which tracked the statutory

5    elements of murder by extreme indifference. *Id*. at 137. In 2008 after Mr. Caldellis' trial, the

6    Committee on Pattern Instructions revised the instruction's language to include "the defendant

7    *knew of and disregarded* the grave risk of death" (emphasis added) to reflect Division Three's

8    holding in *State v. Barstad*, 970 P.2d 324 (1999).[1] The Washington Supreme Court rejected Mr.

9    Caldellis' argument that the to-convict instruction given in his case conflicted with the decision

10   in *Barstad,* and that by omitting the "knew of and disregarded" language, the instruction was

11   constitutionally defective. Instead, the Court held "it stretches credulity to call the 2008 revised

12   language in the pattern instruction an additional 'element' to the crime of extreme indifference

13   murder." *Id*. at 139.

14          In short the Washington Supreme Court held "knowledge" is not an *element* of the

15   offense because it is not included in the statute, and that the instruction given in Mr. Caldellis'

16   case therefore did not improperly omit an element of the offense. *Id.* Accordingly, because the

17   Washington Supreme Court held knowledge is not an element of murder in the first degree by

18   extreme indifference, the omission of "knowledge" from the "to convict" instruction did not

19   impermissibly relieve the state of its constitutional burden of proving each element of murder in

20   the first degree – deliberate indifference.

21

22   ───────────────

23   [1] In *Barstad*, the court held that " [a] person engages in conduct manifesting an extreme
     indifference to human life when … [that person] knows of and disregards the grave risk of death
     to others" was sufficient to instruct the jury on *mens rea.* The 'knew of and disregarded' grave
     risk of death to others instruction was not requested or given in Mr. Caldellis' trial.

REPORT AND RECOMMENDATION - 8

1    Mr. Caldellis also argues because "knowledge" was not set forth in the "to convict"

2    instruction, its placement elsewhere in the jury instructions created an ambiguity and reasonable

3    likelihood that the jury convicted him without finding he "knew his conduct created a grave risk

4    of death." Dkt. 3 at 8; Dkt. 15 at 3-6. He reasons that for the jury to understand how to apply

5    recklessness and knowledge to the first degree murder charge, "the jury would have to perform

6    surgery, taking and discarding bits and pieces from various instructions." Dkt. 3, at 9. He further

7    claims the instructions failed to define "aggravated recklessness," and that while "recklessness"

8    was defined, it was defined only with respect to the lesser offense of manslaughter. *Id*. Mr.

9    Caldellis argues there is thus a reasonable likelihood that the jurors would not know how to

10   apply the definition of "reckless," which included "knowledge" to the first degree murder

11   charge, and that the instructions did not clearly enough instruct the jury it must find Mr. Caldellis

12   *knew* his conduct created a grave risk of death in order to find him guilty of first degree murder.

13   Dkt. 15, at 5. In short, Mr. Caldellis contends the instructions permitted the jury to impermissibly

14   convict him of first degree murder without the requisite knowledge *mens rea* element. Dkt. 15 at

15   5.

16       The record does not support Mr. Caldellis' contention. The record shows there is not a

17   reasonable likelihood that the jurors misunderstood, or were confused about what they had to

18   find to convict Mr. Caldellis of first degree murder. First, the trial judge instructed the jury that it

19   was required to "consider the instructions as a whole," during deliberations. *See* Court's

20   Instructions to the Jury, 1, Dkt 11, Exhibit 12 (state submission of record). The Court did not

21   instruct the jury that in determining whether the state had proven murder in the first degree, the

22   jury was limited to the "to convict instruction," and that the jury could not or should not consider

23   the other instructions, including the instructions regarding recklessness and knowledge. Rather

the trial court instructed the jury to consider the instructions as a whole, which the court

presumes the jury did. *See Doe v. Busby*, 661 F.3d 1001, 1017 (9th Cir. 2011) ("A habeas court

must presume that jurors follow the jury instructions."). Here, Mr. Caldellis offers no convincing

evidence to rebut this presumption.

Second, in his closing argument, the deputy prosecuting attorney told the jurors the

definitions of knowledge and recklessness would help the jurors decide whether Mr. Caldellis

committed first degree murder. The deputy prosecuting attorney specifically stated the

definitions of recklessness would help the jury understand what the extreme difference element

involved. The deputy stated in relevant part:

> The one thing that is helpful about the lesser is it provides some
> definitions for you. A definition of negligence and a definition of
> reckless, and that's why I'd say that can take you back to the
> definition of extreme indifference. It's an aggravated form of
> recklessness. You also got the definition of knowledge and intent.
> What those do is it basically sets forth the spectrum of mental
> states for crimes in Washington. The highest would be intent or
> intentionally. Below that is knowingly. You knowingly commit a
> crime … That provides the reason why you get those options of
> lesser crimes in this case because he is accused of extreme
> indifference, which is an aggravated form of recklessness,
> according to the law, so on that spectrum, you would basically
> insert it above reckless. So perhaps you can use the definition of
> reckless to help you decide what is aggravated recklessness.

Dkt. 19, Exhibit 52 (Trial Record, pg. 3202-03).

Third, the trial judges' instructions are not set forth in a way that required the jury to

"perform surgery," or take "bits and pieces from various instructions," as Mr. Caldellis claims.

Instruction 1 directs the jury to consider the instructions as a whole. Instruction 4, instructs the

jury what it must find to convict Mr. Caldellis of first degree murder by extreme indifference.

Instruction 5 instructs the jury "extreme indifference means an aggravated recklessness which

creates a very high degree of risk greater than that involved in recklessness." Instruction 8

REPORT AND RECOMMENDATION - 10

defines reckless, indicates knowledge is required, and states among other things that "recklessness also is established if a person acts intentionally or knowingly." Instruction 12 instructs the jury of what constitutes knowledge or knowingly.

Read as a whole, there is no reasonable likelihood that the trial court's instructions confused the jury and that the jury applied the instructions in an unconstitutional way. To the contrary, the instructions required the jury that in order to find Mr. Caldellis was guilty of first degree murder it had to find he acted with extreme indifference and that extreme indifference means aggravated recklessness. The jury was instructed what recklessness meant and how it requires that the defendant acts with knowledge, and the jury was further given a separate instruction defining knowledge. Viewed as a whole, the jury was given an unambiguous set of instructions to apply to the first degree murder charge.

And finally, Mr. Caldellis presented a defense that informed the jury he knowingly and intentionally fired the gun that killed the victim. His trial lawyer argued to the jury that Mr. Caldellis' use of force was "lawful," (pg. 3119), that Mr. Caldellis intentionally shot at the crowd (pg. 3230) ("It's clear from what he told the police that his intent in bringing out the gun, in firing the gun was to disperse the crowd."); and that he knowingly fired the gun (pg. 3234) ("as he told the police, to disperse the crowd, to protect his friends by breaking up the fight by firing the gun in this way that would hopefully cause the people to disperse."). *See* Dkt. 19, Exhibit 52.

Of course, Mr. Caldellis also argued although he knowingly shot into the crowd, that the death of the victim was accidental because he had no intent to kill the victim. But this defense nonetheless put Mr. Caldellis' mental state front and center for the jury and there is thus little basis to conclude that the jury convicted him without finding he knowingly shot the gun.

REPORT AND RECOMMENDATION - 11

In sum, Mr. Caldellis has not shown the trial court's first degree murder jury denied him due process of law in violation of clearly established United Sates Supreme Court law, or based upon an unreasonable application of Supreme Court precedent. He has also not shown the state court's decision was based upon an unreasonable determination of the facts presented in the state court proceedings. His contention that knowledge is an essential element of the first degree murder offense is obviated by the Washington Supreme Court's determination that knowledge is not an element of the offense. And his argument that the instructions are ambiguous and thus created a reasonable likelihood the jury convicted Mr. Caldellis without finding he "knew his conduct created a grave risk of death" is belied by the record which establishes the jury was properly instructed, and that the defense he raised acknowledged he discharged the gun knowingly and intentionally. For these reasons, this ground for relief should be denied.

**B.    Claim 2 – Ineffective Trial Counsel – Murder Instructions**

Mr. Caldellis claims he was denied effective assistance of counsel by his trial counsel's failure to object or propose jury instructions that included the "knowledge" language in the "to convict" murder instruction. Dkt. 3, at 4. To establish his lawyer was ineffective, Mr. Caldellis must first establish his lawyer's performance was so deficient that it "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Mr. Caldellis must specifically show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The proper measure of attorney conduct remains reasonableness under prevailing professional norms. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). To avoid the temptation to second-guess counsel's decisions, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189-90

1   (*quoting Strickland*, 466 U.S. at 690). The courts must "begin with the premise that 'under the

2   circumstances, the challenged action[s] might be considered sound trial strategy.'" *Id.*

3       In addition, Mr. Caldellis must show his lawyer's deficient performance prejudiced him

4   so "as to deprive the defendant of a fair trial, a trial whose result is unreasonable." *Id*. It is not

5   enough that counsel's errors had "some conceivable effect on the outcome." Rather, Mr.

6   Caldellis must show "that, but for counsel's unprofessional errors, the result would have been

7   different." *Strickland*, 466 U.S. at 693-94. "That requires a 'substantial,' not just 'conceivable,'

8   likelihood of a different result." *Id.* (*quoting Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

9   Mr. Caldellis must thus show that his lawyer was deficient and that he was prejudiced to

10  establish he was denied effective assistance of counsel. *Id*. at 697. Because counsel has wide

11  latitude in deciding how best to represent a client, review of counsel's representation is highly

12  deferential and is "doubly deferential when it is conducted through the lens of federal habeas."

13  *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003).

14      Here, Mr. Caldellis contends his lawyer failed to object to the trial court's "to convict"

15  murder instruction because counsel "was not aware that the 'to convict' instruction must include

16  the element of 'knowing and reckless disregard of a grave risk of death' created by the

17  defendant's actions." Dkt. 15 at 7. He argues this failure denied him effective assistance of

18  counsel. The Washington Supreme Court rejected the argument on the grounds that the "to

19  convict" instruction was "correct" and Mr. Caldellis has not shown that he could not argue his

20  theory of the case to the jury under the instructions given. *In re Caldellis*, 187 Wn.2d at 140.

21  The Washington Supreme Court's holding that the "two convict" instruction was correct, and

22  that "knowledge" is not an element of the first degree murder charge, is fatal to Mr. Caldellis'

23  claim his lawyer performed deficiently. The Washington Supreme Court held "knowledge" is not

1     an element of the first degree murder charge. Hence Mr. Caldellis' lawyer was not ineffective by

2     failing to ask that "knowledge" be included as an element in the "to convict" murder instruction.

3     And as noted above, a federal habeas court defers the state court as to state law issues, *i.e.*

4     whether in this case knowledge is or is not an element of the state crime.

5         Additionally Mr. Caldellis has failed to demonstrate he was prejudiced. As discussed

6     above, the jury instructions were not ambiguous and did not create a reasonable likelihood that

7     the jury convicted Mr. Caldellis without finding he acted knowingly. The prosecutor also told the

8     jurors to look to the recklessness instructions, which include "knowledge" in determining

9     whether Mr. Caldellis had committed the murder, and Mr. Caldellis presented a defense that he

10     acted knowingly and intentionally, *i.e.*, he shot the gun to protect his friends and disperse the

11     crowd. All of this obviates Mr. Caldellis' claim that his lawyer's failure to object to the

12     instruction was prejudicial in that it allowed the jury to convict him of unknowingly shooting the

13     victim. Accordingly, as Mr. Caldellis has fallen far short of establishing his lawyer's

14     performance was unconstitutionally deficient or that he was prejudiced by his lawyer's actions,

15     claim 2 should be denied.

16     **C.**      **Claim 3 – Ineffective Appellate Counsel**

17         Mr. Caldellis claims appellate counsel was ineffective for failing to argue on direct

18     appeal that the first degree murder instructions were defective. Dkt. 3 at 11-12. The argument is

19     without merit.  Mr. Caldellis presented the murder instruction claim to the Washington Supreme

20     Court and again presents the claim here. As such, he has not and cannot show appellate counsel's

21     performance on direct appeal prejudiced him.

22

23     **D.**      **Claim 4 – Ineffective Trial Counsel - Self-Defense to Murder Instruction**

REPORT AND RECOMMENDATION - 14

1    Mr. Caldellis contends trial counsel was ineffective by failing to request a self-defense

2    jury instruction on the first degree murder charge. Dkt. 3, at 12. The Washington Supreme Court

3    rejected this contention on the grounds that "the decision not to request a self-defense instruction

4    in light of the defense's theory of excusable homicide was a legitimate trail strategy." *In Re*

5    *Caldellis*, 187 Wash. 2d at 142. Mr. Caldellis argues "the state court decision is an unreasonable

6    determination of the facts" because the record shows the prosecution easily eliminated the

7    excusable homicide defense, Mr. Caldellis' trial lawyer argued "justification" (*i.e.*, self-defense),

8    and defense counsel decided not to request a self-defense to murder instruction based upon a

9    misapprehension of the law and the facts of the case. Dkt. 15 at 10-11. The argument is

10    unpersuasive.

11    There is no evidence Mr. Caldellis' shot and killed the victim in self-defense. Mr.

12    Caldellis told the police he shot the gun into the crowd, that "alcohol affects you in stupid ways,"

13    that he was trying to shoot the gun up into the air but it got too heavy and went off when it was

14    level. In closing, the prosecutor repeatedly reminded the jury of what Mr. Caldellis told the

15    police and argued Mr. Caldellis' statements showed he did not shoot the gun accidently or in

16    self-defense. *See* Dkt. 19 Exhibit 52 (Trial Record pg. 3187, 3210).

17    Given the evidence, defense counsel had nothing to support an argument that Mr.

18    Caldellis shot and killed the victim in self-defense. In fact, defense counsel told the jury "I

19    believe the evidence clearly shows it was an accident," and that "I hope I've pointed out to your

20    satisfaction and conviction that it wasn't extreme indifference, and that it was an accident and

21    that it was lawful force." *Id.* at 3269.  In light of the evidence presented to the jury, the

22    Washington State Supreme Court's determination that defense counsel's pursuit of an excusable

23

1    homicide defense and failure to request a self-defense instruction was a legitimate trial strategy,

2    is not based on an unreasonable determination of the facts.

3         In reaching this conclusion, the Court also rejects Mr. Caldellis' claim that trial counsel

4    was ineffective because the prosecution easily eliminated the excusable homicide defense, and

5    because trial counsel actually argued "self-defense." As to the former part of this claim, this is

6    not a case in which counsel erred by pursuing a non-viable defense (excusable homicide) and

7    disregarding a viable defense (self-defense). The record shows there is no evidence Mr. Caldellis

8    shot the victim in self-defense. Hence Mr. Caldellis' defense would have been weaker had he

9    claimed he killed the victim in self-defense instead of accidentally. In contrast, there was some

10   evidence—from Mr. Caldellis' own statements to the police—that the gun went off accidentally.

11        As to the latter claim, the record shows defense counsel mounted a defense based upon

12   the evidence he had to work with—that as Mr. Caldellis told the police, the gun was discharged

13   toward the victim because it got too heavy to point upward, (*i.e.*, it went off accidentally) and/or

14   the gun was discharge up in the air to disperse the crowd. The record clearly shows defense

15   counsel did not argue to the jury that Mr. Caldellis acted in "self-defense." In short, neither of

16   Mr. Caldellis' claims accurately reflect the evidence presented at trial or the arguments made by

17   counsel. Accordingly, there is no basis to conclude that the Washington Supreme Court's

18   decision was based upon an unreasonable determination of the facts.

19        And finally the Court rejects the argument that trial counsel failed to request a self-

20   defense to murder instruction based upon a misapprehension of the law and the facts of the case.

21   As noted above, there is no evidence that Mr. Caldellis acted in self-defense, a fact defense

22   counsel acknowledged in arguing the evidence clearly showed the shooting was an accident.

23   Counsel did not misapprehend the facts of the case. Counsel also did not misapprehend the law.

REPORT AND RECOMMENDATION - 16

1    Counsel was not unaware that self-defense could be applied to the charge of first degree murder,

2    as Mr. Caldellis claims. Dkt. 15 at 10. In his declaration he makes no such sweeping statement.

3    Instead trial counsel stated that he believed "the only available instructions **that fit the evidence**

4    and the defense theory of the case were instructions related to excusable homicide." *Id.*

5    (emphasis added). In other words, because there was no evidence that Mr. Caldellis killed the

6    victim in self-defense, counsel made a sound tactical decision not to argue Mr. Caldellis acted in

7    self-defense. This is not a misapprehension of the law but a tactical decision counsel made based

8    upon the facts counsel had to work with.

9         In sum, in determining whether the Washington Supreme Court's decision was based

10    upon an unreasonable determination of the facts in light of the evidence, this Court must presume

11    that state court factual findings are correct. 28 U.S.C. § 2254(e)(1). A federal court may not

12    overturn state court findings of fact absent clear and convincing evidence that they are

13    objectively unreasonable. Here the Court concludes that the Washington Supreme Court's

14    determination that trial counsel's decision not to seek a self-defense instruction was a legitimate

15    trial strategy is not based upon an unreasonable determination of the facts. The claim should

16    accordingly be dismissed.

17    **E.    Claim 5 – Prosecutor's Fair Response**

18         Mr. Caldellis did not testify at trial. He argues the prosecuting attorney's closing rebuttal

19    argument impermissibly commented "on Caldellis' silence at trial." Dkt 20 at 9. Neither the

20    record nor the law supports the argument. The record shows that during closing arguments, Mr.

21    Caldellis' defense lawyer argued to the jury:

22             You were probably all wondering last week when I rested and you
         realized Noel hadn't testified. Why is it that a defendant might not

23             testify in a case of this nature?

> The most important thing to keep in mind is that the Court has told you very clearly in Instruction No. 5 that the defendant is not compelled to testify. The fact that he hasn't cannot be used to infer guilt or to prejudice him in any way.

Trial Record at 3221.

> As I said, normally this would be something we talk about in jury selection, and so I guess it's a natural inclination a lot of us have. You know, the State puts on their witnesses. They got what their guy says. Why doesn't your guy get up and give his version of the story? In a criminal case, that's not how it works. There are many reasons why a criminal defendant in a case of this nature might not testify.

Trial Record at 3222. Mr. Caldellis' lawyer then listed a number of reasons why Mr. Caldellis did not testify. He argued Mr. Caldellis was 18, young, immature and that as the jurors might know from personal experience, teenage boys "don't necessarily express themselves that well." *Id.* Counsel argued because being a witness is nerve wracking and scary, "you might not compose yourself and express yourself even as well as you might be able to do otherwise." *Id.* Counsel also argued a person might not testify to avoid "confrontive (sic) cross-examination" and having one's words parsed unfairly by the prosecutor. *Id* at 3223. Counsel further told the jury that sometimes, a person does not testify because the person's lawyer believes the prosecution hasn't proven its case. *Id.* Counsel also argued "most importantly" Mr. Caldellis did not testify because "in a real way, you [the jury] have heard from Noel, and that's not just through the recorded interview that you were able to watch," but also through the testimony of the arresting detective and friends of Mr. Caldellis who were present at the shooting. *Id.* at 3223-24.

Counsel then argued:

> So, really, you see, when you look at all of the evidence and consider all of the testimony, in a very real way, you have already heard from Noel.

REPORT AND RECOMMENDATION - 18

> Well, so you go beyond or you take what you've heard. What do we know about Noel Caldellis, both as a young man, and as a participant in this incident on the evening of September 2 and the early morning hours of September 3?

Trial Record at 3224. Trial counsel then proceeded to argue Mr. Caldellis had strong family support, was a recent high school graduate, had good and loyal friends, was involved in youth groups and church activities, has no criminal record, and has good character and a good reputation. Trial Record at 3225. Counsel argued that Mr. Caldellis was a good man who was "concerned about peoples' well-being," not a person with "the fairly extreme and depraved state of mind," who would commit first degree murder by deliberate indifference. *Id.* at 3226.

In rebuttal, the prosecutor argued:

> All I intend to do is respond to some of [defense counsel's] comments. For the most part, I trust you to see right through them. He began by telling you about the defendant's family. All his family, what a wonderful guy the defendant is.
>
> . . .
>
> He listed a bunch of reasons for Noel Caldellis not testifying. He forgot one, didn't he? I can think of one more, can you?

*Id.* at 3275-76.  At this point the following occurred:

> Defense counsel:        "Your Honor, I'm going to object."
>
> Prosecutor:              "All this character evidence . . . "
>
> Court:                   [Defense counsel?]
>
> Defense counsel:        "I'll withdraw it."
>
> Prosecutor:
>
> All this character evidence, you don't know anything about the defendant. You don't know anything about Jay Clements' [victim] family or Jay Clements for that matter. You heard some evidence about the defendant that they want you to hear. Then he says, well, the State, if there was any bad evidence, they would have put it

REPORT AND RECOMMENDATION - 19

> back on. First, it is not relevant, I'm not trying to prove he is a
> good person or a bad person.
>
> I talked to you about the spectrum of stupidity. I'm trying to prove
> to you that the defendant did something at the top of that spectrum.
> That's all there is to it. Whether he is a great guy or a horrible guy,
> it just doesn't matter.

*Id.* at 3276. In the Washington Supreme Court, Mr. Caldellis argued the prosecutor

impermissibly commented on his silence at trial. The Court rejected the argument stating:

> Mr. Caldellis contends the "big" reason suggested by the
> prosecutor that he did not testify was because he was guilty. The
> State argues that the prosecutor meant that Caldellis did not testify
> because he had nothing to say that would help him. We find the
> defense's argument invited the fair response given.

*In re Caldellis*, 187 Wn.2d at 144. Mr. Caldellis argues the Washington Supreme Court's

determination was unreasonable because "the prosecutor's comments were not a 'fair' response

because the comments could have been understood to infer guilt from silence." Dkt. 15 at 15.

Under the Fifth Amendment a prosecutor may not suggest to the jury that the accused's

silence is substantive evidence of guilt." *United States v. Robinson*, 485 U.S. 25, 30, (1988)

(citation omitted). However, in *Robinson*, the Supreme Court held that not every comment by a

prosecutor about a defendant's failure to testify violates the Fifth Amendment. In *Robinson,* the

defendant did not testify at trial. In closing argument, defendant's lawyer argued the Government

breached its "duty to be fair"; the Government unfairly denied defendant the chance to explain

his actions; defendant had the right not to testify; and, that the jury could not draw adverse

inferences from defendant's silence at trial. *Id*. at 28. In response, the prosecutor argued: "He

could have taken the stand and explained it to you, anything he wanted to. The United States of

America has given him, throughout, the opportunity to explain." *Id*.

1      The Supreme Court held "the prosecutor's statement that respondent could have

2  explained to the jury his story did not in the light of the comments by defense counsel infringe

3  upon respondent's Fifth Amendment rights." *Id*. at 31. The Court reasoned, where "the

4  prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made

5  by defendant or his counsel . . . there is no violation of the privilege [against compulsory self-

6  incrimination]." *Id*. The Court noted "[i]t is one thing to hold . . . that the prosecutor may not

7  treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it

8  is quite another to urge, as defendant does here, that the same reasoning would prohibit the

9  prosecutor from fairly responding to an argument of the defendant by adverting to that silence."

10 *Id*. at 34.

11     By this standard, the Washington Supreme Court's determination that the prosecutor's

12 comments were a 'fair' response invited by the defense is not unreasonable as Mr. Caldellis

13 claims. First, there is no question defense counsel invited the response by arguing there are many

14 reasons why Mr. Caldellis did not testify.

15     Second, defense counsel connected the reasons why a defendant might not testify with

16 the argument the jurors had "heard from" Mr. Caldellis *via* the statement he made to the police,

17 and that he was a man of good character and reputation, a man concerned about peoples' well-

18 being," and not a person with "the fairly extreme and depraved state of mind," who would

19 commit first degree murder by deliberate indifference. The prosecutor did not respond to this line

20 of argument by claiming Mr. Caldellis' silence was evidence that he was guilty.

21     Instead, the prosecutor stated Mr. Caldellis' lawyer "forgot about a big one, didn't he. I

22 can think of one more can you," and then immediately continued with the argument that "all this

23 character evidence," before being cut off by defense counsel's objection.  The prosecutor

1    continued his argument about "character evidence" urging the jury that it was not relevant to Mr.

2    Caldellis' guilt or innocence.

3    Given this context,[2] it was not unreasonable for the Washington Supreme Court to

4    conclude that the closing argument of Mr. Caldellis' lawyer "invited the fair response given."

5    Mr. Caldellis disagrees and argues the prosecutor's comment "could have been understood to

6    infer guilt by silence." But the argument disregards the fact the prosecutor's comments were

7    directed at deflecting how the reasons defense counsel gave for not testifying were connected

8    with how Mr. Caldellis was a man of good character, and not a person with an extreme and

9    depraved state of mind who was capable of committing the first degree murder. The prosecutor

10   gave a fair response to this line of argument by contending "He forgot a big one . . . I can think

11   of one more . . . all this character evidence, you don't know anything about the defendant . . . it is

12   not relevant. Dkt. 19, Exhibit 52 (Trial Record pg. 3276).

13   In short, the prosecutor in Mr. Caldellis gave a fair response. He did not argue that the

14   jury should infer guilt from Mr. Caldellis' silence. Rather he responded to defense counsel's

15   arguments that conjoined Mr. Caldellis' silence, good character and innocence, by arguing

16   character is not relevant, *i.e.* the jury should not acquit Mr. Caldellis simply because he is a good

17   person. The Court also reaches the conclusion the prosecutor's response was fair in view of the

18   facts in *Robinson*. In *Robinson*, the Supreme Court found the prosecutor's comment that the

19   defendant "could have taken the stand and explained it to you" was not an impermissible

20   comment on the defendant's right to remain silent.

21

22

23

---

[2] In assessing whether a prosecutor's comments violate due process, Courts examine the entire proceedings and place the prosecutor's statements in context. *See Greer v. Miller*, 483 U.S. 756, (1987).

1       Similarly in *Griffin v. Prosper*, 267 Fed. Appx. 672, 673 (9th Cir. 2008), the prosecutor

2   told the jury the defendant did not testify and there was "no evidence that he didn't do it." The

3   Court of Appeals found the remark was a fair response to the defense counsel's suggestion that

4   the defendant's not guilty plea was evidence that he did not commit the crime, and that the

5   remark was not "manifestly intended to call attention to the defendant's failure to testify," or "of

6   such a character that the jury would naturally and necessarily take it to be a comment on the

7   failure to testify." These are two examples where the prosecutor made statements that more

8   directly commented on a criminal defendant's failure to testify at trial but in which the reviewing

9   court nonetheless deemed the statements to be a fair response. The Court accordingly concludes

10  it was not unreasonable for the Washington Supreme Court to find the prosecutor's comments

11  constituted a fair response to defense counsel's closing argument.

12  **F.      Claim 6 – Ineffective Assistance of Counsel**

13      Mr. Caldellis claims his lawyer's decision to give the jurors reasons why a defendant

14  might not testify was constitutionally deficient because "no competent defense attorney would

15  invite a prosecutor to draw inferences of guilt." Dkt. 15 at 14.

16      The claim incorrectly assumes no competent defense lawyer would have made the

17  argument Mr. Caldellis' lawyer did: a person of good character, and thus not predisposed to

18  committing murder, might not testify for many reasons, especially where the person already

19  made statements to the police indicating the shooting was an accident. The argument reflects a

20  reasonable tactical decision based upon the evidence trial counsel had to work with. The

21  argument fit into the defense theme about Mr. Caldellis' youth, vulnerability, and good

22  character, and how it was therefore unlikely he killed the victim through deliberate indifference.

23  The argument also was consistent the trial court's instruction that the jury could not use Mr.

REPORT AND RECOMMENDATION - 23

Caldellis' silence against him, a directive that defense counsel reminded the jury of when he listed the reasons a defendant might not testify. In short, defense counsel made an argument that furthered Mr. Caldellis' theory of the case and was not a throwaway that merely exposed him to being found guilty because he did not take the stand. The Court cannot say it was objectively unreasonable for Mr. Caldellis' trial counsel to take this tack and thus rejects the ineffective assistance of counsel claim.

## CONCLUSION

For the reasons discussed above, the Court concludes Mr. Caldellis has failed to show the Washington Supreme Court's adjudication of the claims presented here is contrary to, or an unreasonable application of, clearly established federal law, or that it is based upon an unreasonable determination of the facts. As to claim six, whether viewed de novo as Mr. Caldellis claims or under § 2254(d), the claim fails. Accordingly, the Court recommends denying all grounds for relief and dismissing the habeas petition with prejudice.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of the petition only after obtaining a certificate of appealability ("COA") from a district or circuit judge. A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A prisoner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Under this standard, the Court finds jurists of reason could disagree with the Court's resolution of the grounds for relief and recommends that a COA be issued as to all grounds for relief except for Claim 3 —that appellate counsel on direct appeal was ineffective for failing to raise instructional error as the elements of first degree murder. Whether appellate counsel should have raised the error is of no moment. The claim was preserved and raised in the Washington Supreme Court and in this Court. No jurist of reason would find under these circumstances that Mr. Caldellis was prejudiced by appellate counsel. Mr. Caldellis should address whether a COA should be issued as to Claim 3 in his written objections, if any, to this Report and Recommendation.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order.  Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **January 22, 2018.**  The Clerk should note the matter for **January 26, 2018**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed 15 pages.  The failure to timely object may affect the right to appeal.

DATED this 8th day of January, 2018.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 26